**IN THE COURT OF APPEALS OF THE STATE OF IDAHO**

**Docket No. 51463**

| | |
|---|---|
| STATE OF IDAHO, ) | |
| ) | **Opinion Filed: December 8, 2025** |
| Plaintiff-Respondent, ) | |
| ) | **Melanie Gagnepain, Clerk** |
| v. ) | |
| ) | |
| BOJANGLES ARMIN SCHAUBERT, ) | |
| ) | |
| Defendant-Appellant. ) | |
| ) | |

Appeal from the District Court of the First Judicial District, State of Idaho, Kootenai County. Hon. Cynthia K.C. Meyer, District Judge. Hon. Scott Wayman, District Judge.

Judgment of conviction, <u>affirmed</u>; order denying motion to suppress, <u>affirmed</u>.

Erik R. Lehtinen, State Appellate Public Defender; Kimberly A. Coster, Deputy Appellate Public Defender, Boise, for appellant.

Hon. Raúl R. Labrador, Attorney General; Kenneth K. Jorgensen, Deputy Attorney General, Boise, for respondent.

---

HUSKEY, Judge

Bojangles Armin Schaubert appeals from the district court's judgment of conviction for possession of a controlled substance. Schaubert argues the district court erred in denying his motion to suppress statements he made to the probation officers and law enforcement officers and the evidence found as a result of those statements. Schaubert asserts the district court erred when it denied his motion to suppress because the term of his probation that required him to cooperate with his probation officer created a classic penalty situation in violation of his constitutional rights provided by the Fifth Amendment to the United States Constitution. For the reasons below, we affirm.

1

## FACTUAL AND PROCEDURAL BACKGROUND

Schaubert was placed on probation after pleading guilty to felony possession of a controlled substance, Idaho Code § 37-2732(c)(1), and misdemeanor driving under the influence, I.C. §§ 18-8004, -8005. One of the terms of Schaubert's probation was:

> I will obey all municipal, county, state and federal laws. I will cooperate with the requests of my probation/parole officer. Cooperation includes being truthful. If I am detained by law enforcement, I will tell the officer(s) that I am on felony supervision, and the name of my probation/parole officer. I will notify my probation/parole officer of any such contact within 24 hours.

While Schaubert was on probation, Probation Officers Williams and Keating conducted a routine compliance check at Schaubert's home. Probation Officer Williams told Schaubert, "I got a call regarding a relapse that you might have had, let me know what's going on and how can I help." Schaubert admitted to Probation Officer Williams that he relapsed and had a controlled substance in his vehicle; Schaubert then described his vehicle to the probation officers. After the wrong vehicle was searched, Schaubert showed the probation officers the correct vehicle. The probation officers then searched the correct vehicle and found methamphetamine and drug paraphernalia. At no point did Schaubert invoke his Fifth Amendment right to remain silent and not incriminate himself.

After finding the methamphetamine and drug paraphernalia, Probation Officer Williams contacted local law enforcement. When Officer Knight arrived, the probation officers informed her they were there for a compliance check and found a controlled substance and drug paraphernalia in Schaubert's vehicle. Officer Knight then provided Schaubert with his *Miranda*[1] warnings. Schaubert admitted to Officer Knight that he had relapsed and the methamphetamine in the vehicle was his.

Schaubert was charged with felony possession of a controlled substance, methamphetamine, I.C. § 37-2732(c)(1), and possession of drug paraphernalia, I.C. § 37-2734A(1). Schaubert filed a motion to suppress (1) the statements he made to the probation officers and law enforcement; and (2) the drug evidence found in his vehicle. Schaubert argued he was placed in a classic penalty situation, which violated his Fifth Amendment right to remain silent and not incriminate himself.

---

[1] *See Miranda v. Arizona*, 384 U.S. 436 (1966).

During the motion to suppress hearing, Probation Officers Williams and Keating testified that neither of them threatened to revoke Schaubert's probation. Schaubert testified that one of the probation officers told him the last time a probationer was not honest, the probationer was taken to jail because the probation officer found incriminating evidence. Probation Officer Williams testified he did not recall such a conversation.

The district court denied the motion to suppress, finding Schaubert was not placed in a classic penalty situation. Schaubert filed a motion to reconsider the single issue of whether a classic penalty situation existed when the probation officers directed Schaubert to show them the vehicle and where the drugs were located. The district court denied Schaubert's motion to reconsider, finding he was not placed in a classic penalty situation because "[t]he probation condition to 'cooperate' does not lend itself to an interpretation that the invocation of the Fifth Amendment right will result in a probation revocation."

Subsequently, Schaubert entered a conditional guilty plea to possession of a controlled substance, reserving his right to appeal the district court's denial of his motion to suppress. The State dismissed the drug paraphernalia charge and agreed not to file a persistent violator sentencing enhancement. Schaubert appeals.

## II.

## STANDARD OF REVIEW

The standard of review of a suppression motion is bifurcated. When a decision on a motion to suppress is challenged, we accept the trial court's findings of fact that are supported by substantial evidence, but we freely review the application of constitutional principles to the facts as found. *State v. Atkinson*, 128 Idaho 559, 561, 916 P.2d 1284, 1286 (Ct. App. 1996). At a suppression hearing, the power to assess the credibility of witnesses, resolve factual conflicts, weigh evidence, and draw factual inferences is vested in the trial court. *State v. Valdez-Molina*, 127 Idaho 102, 106, 897 P.2d 993, 997 (1995); *State v. Schevers*, 132 Idaho 786, 789, 979 P.2d 659, 662 (Ct. App. 1999).

## III.

## ANALYSIS

On appeal, Schaubert argues his statements admitting to possessing controlled substances and conduct showing the probation officers where his drugs were was compelled in violation of the Fifth Amendment. Schaubert argues because his statements were compelled, he was placed in

3

a classic penalty situation, and as a result, the evidence derived from those statements should be suppressed. The State argues there was no classic penalty situation because Schaubert did not and could not show he would have violated his probation if he invoked his Fifth Amendment privilege against self-incrimination. Further, the probation officers did not express or imply a threat of revocation when Schaubert volunteered the statements.

The Fifth Amendment to the United States Constitution guarantees that no person "shall be compelled in any criminal case to be a witness against himself." This privilege applies to the states through the Fourteenth Amendment. *Lefkowitz v. Turley*, 414 U.S. 70, 77-78 (1973). It is well-accepted the protections of the Fifth Amendment extend beyond the context of a criminal trial, granting an individual the right "not to answer official questions put to him in any other proceeding, civil or criminal, formal or informal, where the answers might incriminate him in future criminal proceedings." *Id*. at 77. These protections are not lost by conviction or incarceration--the United States Supreme Court has specifically held that an individual does not lose the Fifth Amendment's protections merely because he or she made incriminating statements while incarcerated or on probation. *Minnesota v. Murphy*, 465 U.S. 420, 426 (1984). An individual protected by the privilege may rightfully refuse to answer unless and until the individual is granted immunity against future use of the compelled answers in a subsequent criminal proceeding. *Id.* Absent such immunity, if the individual is nevertheless compelled to answer, the answers "are inadmissible in a subsequent trial for a crime other than that for which he has been convicted." *Id.*

However, an individual's failure to affirmatively assert his or her Fifth Amendment privilege does not necessarily preclude its benefit. *See Garner v. United States*, 424 U.S. 648, 656-57 (1976). The United States Supreme Court has previously held that a defendant's failure to affirmatively invoke Fifth Amendment protections may be excused in situations where that individual is denied a "free choice to admit, deny, or refuse to answer." *Id.* at 656-57. The Court has recognized that such coercion occurs where the very assertion of the privilege is penalized so as to "foreclose a free choice to remain silent." *Murphy*, 465 U.S. at 437. Such circumstances are commonly referred to as a "classic penalty situation." *Id.* at 435. To constitute a penalty situation, the individual must be faced with the government's assertion, either expressly or impliedly, that invocation of the Fifth Amendment will lead to a substantial penalty. *See, e.g.*, *Lefkowitz v. Cunningham*, 431 U.S. 801, 806 (1977).

4

Determining whether a classic penalty exists based on a probation agreement is a two-step inquiry. *United States v. Linville*, 60 F.4th 890, 897 (4th Cir. 2023). First, the court must consider if the conditions of probation require a choice between invoking the Fifth Amendment and revocation of probation. *Id.* Second, even if the conditions do not require a choice, the court must determine whether there is a reasonable basis for the probationer to believe they do. *Id.*

## A. Express Terms

Despite Schaubert's status as a probationer, the Fifth Amendment protections were still available to him. Schaubert argues the very terms of his probation agreement placed him in a classic penalty situation because "the broad and unqualified requirement that Mr. Schaubert 'cooperate' prohibited him from refusing his probation officer's requests by invoking the right to silence, and implied that such a refusal would jeopardize his conditional liberty." In contrast, the State argues that Schaubert's probation conditions did not place him in a classic penalty situation because there was neither an express nor implied penalty for failing to cooperate.

Schaubert specifically argues that his probation was "expressly conditioned on the requirement that he 'cooperate with the requests of [his] probation officer.'" A similar argument was made and rejected in *Murphy*. *See Murphy*, 465 U.S. at 434-39. There, a term of Murphy's probation required, among other things, that he "report to his probation officer as directed, and be truthful with the probation officer 'in all matters.'" *Id.* at 422. Murphy was told failure to comply with those conditions "could result in his return to the sentencing court for a probation revocation hearing." *Id.* A sex offender treatment counselor informed Murphy's probation officer that Murphy admitted to a rape and murder years earlier. *Id.* at 423. During an arranged meeting between Murphy and his probation officer, Murphy admitted to previously committing the rape and murder. *Id.* at 423-24. Murphy was informed by the probation officer that she would relay the information to the authorities. *Id.* Murphy was later indicted for first degree murder. *Id.* at 425.

On appeal to the United States Supreme Court, Murphy argued he was compelled to make incriminating disclosures instead of claiming his Fifth Amendment privilege because he was threatened with having his probation revoked if he was untruthful with his probation officer. *Id.* at 434. The Court examined the language of his probation agreement and noted that "[a] state may require a probationer to appear and discuss matters that affect his probationary status; such a requirement, without more, does not give rise to a self-executing privilege." *Id.* at 435. The Court

5

further reasoned that any legal compulsion Murphy felt to attend the meeting and truthfully answer the probation officer's questions was "indistinguishable from that felt by any witness who is required to appear and give testimony, and, as we have already made clear, it is insufficient to excuse Murphy's failure to exercise the privilege in a timely manner." *Id*. at 437.

The Court also reasoned Murphy's probation condition only proscribed false statements. *Id.* at 437. There was no condition limiting his freedom to decline to answer particular questions, nor was there a condition suggesting Murphy's probation was conditioned on waiving his Fifth Amendment privilege with respect to further criminal prosecution. *Id.*

The Court concluded that Murphy was not deterred from claiming his Fifth Amendment privilege as there was no direct evidence that Murphy confessed because he feared his probation would be revoked if he remained silent, and Murphy was not expressly informed that asserting his Fifth Amendment privilege would result in an imposition of a penalty. *Id*. at 438-39. The Court held that, although Murphy's probation required him to appear and give testimony about matters relevant to his probationary status, they did not take an impermissible extra step and require him to "choose between making incriminating statements and jeopardizing his conditional liberty by remaining silent." *Id*. at 436.

Schaubert's condition of probation is like the condition in *Murphy*. Schaubert agreed to "cooperate with the requests of [his] probation/parole officer. Cooperation includes being truthful." Like in *Murphy*, that Schaubert must cooperate, without more, "does not give rise to a self-executing privilege" in contravention of the Fifth Amendment. *Id.* at 435. Similarly, any legal compulsion Schaubert felt to cooperate and truthfully answer the probation officer's questions "is indistinguishable from that felt by any witness who is required to appear and give testimony" and did not excuse Schaubert from exercising the privilege in a timely manner. *Id*. at 437. Finally, like in *Murphy*, Schaubert's probation agreement contains no express sanction for failing to tell or show the officers where the controlled substances were located. Consequently, there is no penalty situation created by the terms of Schaubert's probation and his statement to his probation officer waived any privilege he could assert.

Schaubert directs this Court to *United States v. Saechao*, 418 F.3d 1073 (9th Cir. 2005) and *McKathan v. United States*, 969 F.3d 1213 (11th Cir. 2020) to support his argument that this condition of probation placed him in classic penalty situation. However, those cases are distinguishable from Schaubert's case. In *Saechao*, the Ninth Circuit held Saechao's Fifth

6

Amendment right to remain silent and not incriminate himself was violated because the conditions of his probation placed him in a classic penalty situation when he admitted to illegally possessing a firearm. *Saechao*, 418 F.3d at 1075. One of the conditions required Saechao to "promptly and truthfully *answer all* reasonable inquiries by the Department of Correction or County Community Correction Agencies," and another condition prohibited Saechao from possessing "weapons, firearms, or dangerous animals." *Id.* (emphasis added). Additionally, "[t]he terms of his probation also provided that failure to comply with any of the conditions was grounds for arrest, revocation of probation, or modification of conditions." *Id.* Thus, the conditions of Saechao's probation expressly required him to *answer all* reasonable inquiries about weapons or firearms, which prevented him from remaining silent. *Id.* at 1078. Had Saechao chosen to remain silent, he would have effectively violated the terms of his probation for not providing a required truthful *answer*. *Id.* The Ninth Circuit held Saechao was faced with a classic penalty situation because the terms of his probation required him to either answer incriminating questions and face future criminal charges or invoke his Fifth Amendment right to remain silent and face the penalty of probation revocation. *Id.* at 1076.

The supervised release conditions in *McKathan* were similar to the conditions in *Saechao*. Pursuant to the terms of his supervised release, McKathan was required "to *answer* truthfully all inquiries by the probation officer and follow the instructions of the probation officer." *McKathan*, 969 F.3d at 1218 (emphasis added). Not only did the terms of McKathan's probation inform him that his supervised release could be revoked if he violated the conditions, but his probation officer also instructed him that if he did not follow the conditions, his supervised release would be revoked, and he would return to prison. *Id.* at 1218-1221. The court initially found the terms of McKathan's supervised release did not create a classic penalty situation. *Id*. at 1226. However, the court ultimately held that the record contained direct evidence that McKathan incriminated himself because he feared his probation would be revoked if he remained silent. *Id*. at 1228. The court found McKathan's understanding was not unreasonable and thus, created a classic penalty situation. *Id*.at 1229.

In *Murphy* and in this case, if Schaubert cooperated, such cooperation had to be truthful, but Schaubert was under no more compulsion to cooperate than anyone who is required to appear and give testimony. Thus, if Schaubert wished to invoke his Fifth Amendment right to remain silent, he needed to affirmatively do so. *Murphy*, 465 U.S. at 435-437. And unlike in *Saechao*

7

and *McKathan*, Schaubert's terms of probation did not limit his freedom to decline to answer particular questions, nor was there a condition suggesting Schaubert's probation was conditional on waiving his Fifth Amendment privilege with respect to further criminal prosecution; in fact, the terms of Schaubert's probation contain no penalty term whatsoever. Moreover, the probation officer in *McKathan* made it clear that supervised release would be revoked, and the probationer would return to prison if the probationer invoked his Fifth Amendment privilege. *McKathan*, 969 F.3d at 1218-1221. Here, Schaubert concedes there was no express statement made by the probation officers that if Schaubert refused to incriminate himself he would be in violation of the terms of his probation or that the failure to do so would result in a probation violation proceeding. Because Schaubert's conditions of probation only required him to cooperate and there was no impermissible extra step that required him to choose between making incriminating statements and jeopardizing his conditional liberty by remaining silent, the terms of Schaubert's probation did not place him in a classic penalty situation.

## B.    Implied Terms

The district court also found Schaubert's belief that his probation would be revoked if he asserted his Fifth Amendment right was not reasonable. The district court reviewed the testimony from the motion to suppress hearing and noted "Officer Williams' testimony at the motion to suppress hearing revealed that this is not the first time Schaubert has had a relapse and not the first time that probation has 'worked with' Schaubert instead of filing a motion for probation violation." The district court also noted that both probation officers testified they never threatened to revoke Schaubert's probation and would not violate a probationer's probation for asserting a Fifth Amendment privilege. Schaubert also testified that no one told him his probation would be revoked for asserting a Fifth Amendment privilege and no one told him he did not have a Fifth Amendment right.

The district court found the probation officers did not imply that if Schaubert invoked his Fifth Amendment right, such invocation would have led to a substantial penalty. Schaubert testified that the probation officer who questioned him that night told him they had just come from dealing with another probationer who was not honest with them and when they searched that probationer's home, they found incriminating evidence and then took that probationer to jail. The district court found the probation officer did not assert that the other probationer was taken to jail because he was not honest. Rather, the probation officer conveyed to Schaubert that a different

8

probationer was not honest with him, the probation officer found incriminating evidence, and the probationer was taken to jail because incriminating evidence was found. Thus, the probation officers did not imply Schaubert would be taken to jail if he chose to invoke his Fifth Amendment rights, as asserted by Schaubert, because the probation officers took the other probationer to jail after finding incriminating evidence and not because that probationer invoked his Fifth Amendment privilege.

The district court again relied on *Murphy*, noting revocation of probation is not automatic because there are procedures that must be followed before probation can be revoked. The district court noted Schaubert would be entitled to a hearing to determine whether there was a violation, the violation was willful, and incarceration was necessary before Schaubert's probation could be revoked. The district court also held that *Saechao* and *McKathan* were distinguishable from this case on their facts and did not provide a reasonable basis for Schaubert's belief that his probationary status would be jeopardized for invoking his Fifth Amendment right. When considering the differences between *Saechao* and this case, the district court noted that in Oregon (the state in which Saechao was on probation), Saechao had a reasonable basis for believing his probationary status could be jeopardized for failing to comply with the terms of probation because a previous case in Oregon held that "an invocation of [the Fifth Amendment] privilege does not constitute compliance with Oregon's probation conditions," which would lead future probationers to infer that if they did not answer incriminating questions, their probation could be revoked. The district court also noted that, in *McKathan*, the probation officer told McKathan that if he did not follow the conditions of probation, probation would be revoked, and he would return to prison. As neither of those circumstances occurred in Schaubert's case, the district court found those cases unpersuasive.

Schaubert was not placed in a classic penalty situation in contravention of his Fifth Amendment rights. The terms of his probation did not expressly or impliedly provide that Schaubert would face a substantial penalty if he invoked his Fifth Amendment privilege. Any belief Schaubert harbored that his probation would be revoked if he did not show or tell the probation officers where the controlled substance was located was not reasonable because of the historical actions of the probation officers and the probation officers did not say or imply Schaubert's probation would be revoked if he asserted his privilege against self-incrimination.

9

Therefore, the district court did not err in denying Schaubert's motion to suppress because Schaubert was not placed in a classic penalty situation.

## IV.
## CONCLUSION

Schaubert has failed to establish the district court erred in denying his motion to suppress the statements and the evidence found as a result of those statements because he was not placed in a classic penalty situation in contravention of his Fifth Amendment privilege not to incriminate himself. Therefore, the district court's order denying Schaubert's motion to suppress and Schaubert's judgment of conviction are affirmed.

Chief Judge GRATTON and Judge LORELLO, **CONCUR**.